UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DONALD J. DELANGHE, as trustee of the
Trust Agreement of Donald J. DeLanghe,
and TERESA M. DELANGHE, as trustee of
the Trust Agreement of Teresa M. DeLanghe,

        Plaintiffs,

v.                              **MEMORANDUM OF LAW & ORDER**
                              Civil File No. 13-3429 (MJD/TNL)

ARCHER DANIELS MIDLAND
COMPANY,

        Defendant.

Benjamin J. Hamborg and Court J. Anderson, Henson & Efron, P.A., Counsel for Plaintiffs.

Curtis D. Ripley and David R. Crosby, Stinson Leonard Street LLP, Counsel for Defendant.

**I.    INTRODUCTION**

The above-entitled matter comes before the Court on Defendant's Motion to Reconsider Summary Judgment on Civil Theft and Conversion [Docket No. 65] and Plaintiffs' Letter Request seeking permission to file a motion to amend the Complaint to add a claim for punitive damages [Docket No. 73]. Because

Plaintiffs do not own the groundwater and because they have not shown good cause to file an untimely motion, the Court grants Defendant's Motion to Reconsider and denies Plaintiffs' Letter Request.

## II.   BACKGROUND

On January 12, 2016, the Court denied Defendant's Motion for Summary Judgment and granted in part and denied in part Plaintiffs' Motion for Summary Judgment. [Docket No. 59] The relevant factual background of this matter is set forth in the Court's Summary Judgment Order. As part of the Court's Order, the Court granted summary judgment for Plaintiffs on liability on Count Five, Conversion, and Count Six, Civil Theft.

After the Court issued its Summary Judgment Order, Plaintiffs Donald and Teresa DeLanghe were involved in a condemnation trial in state court. <u>Marshall Municipal Utilities v. DeLanghe</u>, Lyon County District Court File No. 42-CV-13-269. Marshall Municipal Utilities ("MMU") sought to condemn a portion of the DeLanghes' property around certain wells so that MMU could drill replacement wells. On January 25, 2016, during that trial, Donald DeLanghe was asked: "You agree that you don't own the water in the aquifer, correct?" He testified: "Yes." (Ripley Aff., Ex. A., DeLanghe Testimony 55.)

On February 17, the Court granted the request of Defendant Archer Daniels Midland Company ("ADM") to file a motion for reconsideration of the Court's ruling with respect to civil theft and conversion on the grounds that the groundwater is not Plaintiffs' property. [Docket No. 64]  In its Summary Judgment Order, the Court held that ADM was liable for both conversion and civil theft based on its taking of water from the wells on Plaintiffs' land. During the summary judgment briefing, neither party addressed the question of whether the groundwater drawn from the wells constituted Plaintiffs' property. The Court now turns to that issue.

### III.   DISCUSSION

#### A.   Standard for Conversion and Civil Theft

Conversion "is defined as an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession." DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997) (citations omitted). "The elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest." Lassen v. First Bank Eden Prairie, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994) (citation omitted).

Under Minnesota's civil theft statute, "[a] person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater."  Minn. Stat. § 604.14, subd. 1.  "Property means "all forms of tangible property, whether real or personal, without limitation including . . . water. . . ."  Minn. Stat. § 609.52, subd. 1(1).  "Movable property" means "property whose physical location can be changed, including without limitation things growing on, affixed to, or found in land."  Id., subd. 1(2).

### B. Statutory Language

Plaintiffs point out that the criminal theft statute explicitly includes "water" in the definition of "property."  Minn. Stat. § 609.52, subd. 1(1).  Additionally, the statute provides that "movable property" includes "things . . . found in land."  Id., subd. 1(2).   The statute does not further define or limit the term "water."  They conclude that the Court must enforce the plain language of the statute as written and conclude that the groundwater was their property.  This argument is misplaced.  The material question is not whether the groundwater at issue in this lawsuit is "property."  The material question is whether the groundwater at issue is the property **of Plaintiffs**.  See Minn. Stat. §

4

604.14, subd. 1 ("A person who steals personal property from another is civilly liable **to the owner of the property** . . . .") (emphasis added); Lassen, 514 N.W.2d at 838 ("The elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest.") (citation omitted).

    C.    **Whether the Water Was Plaintiffs' Property**

Minnesota has adopted the "correlative rights" doctrine, under which a landowner's rights to water in aquifers under the land are limited to "reasonable use," and rejected the "English Rule," under which landowners have absolute right to water under their land.  See Erickson v. Crookston Waterworks, Power & Light Co., 111 N.W. 391, 393-94 (Minn. 1907) ("Erickson I"); Erickson v. Crookston Waterworks Power & Light Co., 117 N.W. 435, 439 (Minn. 1908) ("Erickson II").  In keeping with the correlative rights doctrine, a landowner must obtain a permit in order to withdraw more than 10,000 gallons per day of groundwater.  See Minn. Admin. R. 6115.0620.  ADM's permit to draw groundwater from the wells on the DeLanghes' land authorizes ADM to draw "waters of the state."  (Ripley Aff., Ex. B, DNR Water Appropriation Permit ¶ 2(a).)  "'Waters of the state' means surface or underground waters, except surface

waters that are not confined but are spread and diffused over the land." Minn. Stat. § 103G.005, subd. 17.

When interpreting Minnesota law, courts have consistently held that groundwater is the property of the State of Minnesota, not of the private landowner. See, e.g., Bell Lumber & Pole Co. v. U.S. Fire Ins. Co., 60 F.3d 437, 443 (8th Cir. 1995) ("In the present case, no actual injury occurred until the contaminants in question entered the groundwater and damaged the property of a third party—namely, the State of Minnesota."); Domtar, Inc. v. Niagara Fire Ins. Co., 563 N.W.2d 724, 734 (Minn. 1997) (providing that "groundwater contamination is damage to public property" and is not damage to the private property owner that owns the land above the groundwater); Minn. Min. & Mfg. Co. v. Travelers Indem. Co., 457 N.W.2d 175, 182 (Minn. 1990) (holding that "[p]ollution of the groundwater is damage to public property") (citation omitted); Cargill, Inc. v. Evanston Ins. Co., 642 N.W.2d 80, 89, 90 (Minn. Ct. App. 2002) (holding that although, in Georgia, "groundwater is part of the owner's property to the extent it is below the owner's property," "[i]n Minnesota, groundwater is considered part of the public domain" and "is not part of the owned property") (citing Domtar, Inc., 563 N.W.2d at 734); Krawczewski v. W.

Cas. & Sur. Co., 506 N.W.2d 656, 659 (Minn. Ct. App. 1993) (holding that "[a]s long as the contaminants were in the soil, the only damage was to the insured's own property," but that, then, "the contaminants left the insured's property and entered the ground water, which is the property of a third party, the state").

Cases noted by Plaintiffs addressing the State of Minnesota's allocation of the use of public groundwater or upholding liability for trespass based on installing a well on another's land without permission do not contradict this well-established law.  See Crookston Cattle Co. v. Minnesota Department of Natural Resources, 300 N.W.2d 769, 773-74 (Minn. 1980); Golden Rule Estates Owners' Association v. Matzek, No. C9-90-2282, 1991 WL 115124, at *2 (Minn. Ct. App. July 2, 1991).

### D. Letter Request to File Motion to Amend the Complaint

On April 26, 2016, while the Motion to Reconsider was pending, Plaintiffs filed a letter request asking permission to file a motion to amend the Complaint to add a claim for punitive damages.  The Court's Pretrial Scheduling Orders provide: "Motions for leave to amend to add punitive damage claims must be served and filed on or before April 1, 2014."  [Docket Nos. 8, 14, 17]  Thus, Plaintiffs seek to file a motion more than two years after the deadline to do so has passed.  The Court concludes that Plaintiffs have not demonstrated good cause;

7

Plaintiffs offer no reason that they could not have requested punitive damages before April 1, 2014. See Fed. R. Civ. P. 16(b)(4). Moreover, discovery closed more than one year ago, the dispositive motion deadline has passed, and this case is ready for trial; Defendant would be severely prejudiced by the addition of a punitive damages claim at this stage.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Defendant's Motion to Reconsider Summary Judgment on Civil Theft and Conversion [Docket No. 65] is **GRANTED**.

2. The Court's Summary Judgment Order, issued January 12, 2016 [Docket No. 59], is **AMENDED** as follows: Defendant Archer Daniels Midland Company is entitled to summary judgment on Count Five, Conversion, and Count Six, Civil Theft, and Counts Five and Six are **DISMISSED**.

3. Plaintiffs' Letter Request seeking permission to file a motion to amend the Complaint to add a claim for punitive damages [Docket No. 73] is **DENIED**.

Dated:  May 16, 2016                         s/ Michael J. Davis
                                             Michael J. Davis
                                             United States District Court